23-5227 Smith v. Williams Mr. Graham Good morning my name is Kevin Graham may it please the court I represent Dr. Collette Smith in this employment matter and the district court in this case found that Dr. Smith did not have a property interest and did not have a business expectancy. One in a 1983 case, one under tortious interference under Kansas law. Both cases or the decision of both claims revolved around the same set of facts and it's a really fact intensive case and I think it's important to understand that this case I think tests the limits that a state government employer can do when I would certainly assert bullying their employee, how they can operate with regard to their employee. So... Well we're dealing with a competition closure aren't we? Well we are, yes and I think it's really important to understand that. Did you ever suggest or argue that it was too far reaching and was unenforceable? Let me give you some, no because we didn't need to and here's why. So Mr. Williams was hired in 2015 as the CEO of the hospital. At that time Dr. Smith had been there for years At that time there was no contract. Well there was nothing signed There was no contract, right there's nothing So in June of 2017 Mr. Williams had two different employees of his tell him we don't have a contract with her we don't have anything and he of course had only been there a couple years so he himself has no personal knowledge. So in June of 2017 he embarks on a process to try to get her to sign a contract Law School 101, two parties decided to enter into negotiations to enter into a contract During that time he says we have a contract There are four documents that have been asserted not one of them is signed by all parties not one of them is an effective contract and even if you believe that any of them are effective contracts they were all from 2011 or 2012 none of them have an expiration longer than three years. So even in the best case scenario there's not a contract in existence starting in 2015 There are no clauses to make it evergreen there are no repetition clauses, nothing The fact of the matter is from 2011 to 2018 Dr. Smith did not have a contract. It was probably a mistake when they found that out, they figured that out they started the process to do that To do what? Get a contract? Get a contract They negotiated and again Law School 101 they tried to negotiate, they couldn't get there No harm no foul, right? You can't buy the car the dealer won't agree to the money so you walk away and that's what she did. So the property interest is what? The property interest is her license Her license was never suspended? It was not, but the law doesn't require an actual suspension So what happened is after she left he began to try to enforce a non-existent non-competition clause with a 60 mile radius and my 8th grade math tells me that's 11,310 square miles That's larger than 8 states in the United States She could not practice before 10 Did you argue there was no contract? We filed a summary judgment motion on that, yes and that was declared moot when this word came out What was the complaint? I apologize, I don't understand Did you file a complaint against the hospital or whoever? Yes, we filed a complaint alleging the tortious interference That there was no contract? Yes, that was a factual issue in the case, yes Let me ask you about the property interest What's that? You're talking about the restrictions on where he could work but as I understand the law, you have to show that the defendant's actions destroyed the value or utility of the license and she was able to continue practicing She was never handicapped by not having a license or by being denied the utility of the license I would argue she was handicapped She worked 2,649 hours outside of the area But she did work She could not work in an 11,000 square mile area But she did work Were there times that she sought employment through her new I think it's a newly formed LLC that was within the non-compete clause range that even if this assumes there is a non-compete clause in a contract that doesn't exist but once that was noted to the former employer didn't they grant exceptions for her to actually do it? One time, and certainly if you don't have a contract and you don't have a non-compete she shouldn't have to go beg her former employer to let her out of something that doesn't exist and if I may, her employer was a company called DockSoupCare and they would place her and what they told her, and so the hospital, Mr. Williams reached out to DockSoupCare and said you can't place her in this area, in this large, large footprint How did that destroy the utility of her license when she was able to practice and Judge Kelly just gave the number of hours she worked but that's inconsistent with saying it was destroyed it might have been impaired, but that's not the test I think I understood them, that is kind of the test I mean it was significantly impaired because her employer said we're not going to place you in this footprint this large footprint You don't agree with our statement that it has to be destroyed I do not think it has to be destroyed The language in Stidham is whether the actions destroyed the value or utility of the medical law Correct And you think it was destroyed? The sentence before that in Stidham says a state agency cannot escape liability for depriving an individual of a legitimate property interest merely by arguing that it has not revoked or destroyed the actual legal title to that interest There is a point where if you say you can't work It hasn't destroyed the legal title, but it hasn't destroyed the utility Is there a way she can destroy the utility without revoking the license Is Stidham just saying we look at it pragmatically If she was unable to use her license then she lost her property I would say you would look at it pragmatically and I would say if you have to drive 12 hours to effectively practice and buy a trailer and go live in a trailer two weeks on and two weeks off in Nebraska so you can be a doctor that does essentially destroy the utility of her license Can you help me understand why if she is in this scenario with Docs Who Care and they say we are not going to schedule you within this 60 mile radius because of your prior contract She says I have no prior contract, in fact that is why I left There was no contract, they tried to get me to sign a contract, I wouldn't There is no non-compete clause So why was that even an issue Mr. Williams reached out to Docs Who Care reached out to McPherson Medical Center contacted Neosho Medical Center, contacted multiple medical centers and said if you do this you will be sued, we will take legal action Why didn't Docs Who Care say we don't care because you don't have a contract That is a question for them but they didn't want to get into litigation with Labette County Hospital So her employer says we are getting bullied also and we are not going to do this So why didn't she sue GoDocsCare Well she thought she should sue the person who won't let her work which is the hospital in question that lied to everyone about having a contract But why isn't it speculative to say they were going to schedule her within this range anyway because the one time they did they granted an exception so why didn't they say we are just going to keep doing that And I guess pragmatically is that reasonable to say every time you are going to work a weekend you have to go get permission from a hospital that you used to work for that you never had a contract with to get relief from a non-existent non-compete That feels incredibly burdensome and unnecessary To me that can't be the law that she has to go ask permission for something that doesn't exist every single time she wants to work because this is a placement kind of hospital employment where one weekend she's here, one weekend she's here another weekend she's here It's a one year contract someplace and you have to ask once This is perhaps more relevant to the second claim But where was the reasonable expectation of a business that was impaired here for the second claim What was the business prospect she had that she was deprived of? She hasn't shown any offer that she was turned down She worked for Docs Who Care Her employer was Docs Who Care. Docs Who Care said we will not place you in this radius That's her employer The confusion that the district judge had was what about the hospitals Her employer is Docs Who Care and they said we're not going to do it So now she's faced with this huge footprint that she can't be a doctor The business expectancy is with her employer Docs Who Care And where is her expectation that she could get a position with one of those hospitals Doesn't she have a burden of showing that she was expecting to be able to work at one of these hospitals and was denied because the only time there was some communication about a job with one of those hospitals it was the plaintiff not Docs Who Care or somebody else who kept her from working there She certainly was offered to work in those locations and then Mr. Williams contacted them and said you can't have her That's in the record With McPherson I think and Wilson Wilson Medical Center They had offered her positions and she couldn't take those positions because of obstruction by the defendant She was offered positions scheduled to work Mr. Williams found out contacted both the hospital and Docs Who Care and said she's got to not compete you can't have her Docs Who Care then says we're going to honor your request and then Docs Who Care says we're not going to place you anymore What's the Newton and McPherson job opportunities wasn't she granted privileges and how is that within the range of the non-compete Weren't those sort of separate issues I'm not sure I'm following. We're talking about her business expectations and so she has to have had some business interest that was impeded right correct So as I was reading through the case I thought there were like three instances where she was alleging that she had some business interest that was somehow impeded and she listed Newton McPherson and then I think it was a Wilson or something Wilson Medical Center Judge Harts just talked with you about Wilson Medical Center where it was her when given the opportunity for a four day shift said no thank you but help me understand Wilson or excuse me Newton and McPherson what was the interference with those two potential employments So at least with McPherson they continue to send notices from Labette County Hospital to McPherson indicating that she was not really qualified or should not be considered for privileges because she would they felt she was you know didn't have a good temperament but she got her privileges right and this is the confusion I think that the circuit court pardon me the district court judge had her employer was Docs Who Care at the point Docs Who Care says we're not going to place you she has no option to work that's why she has to go to Sydney Nebraska to get a job where she just tell the Docs Who Care I'm out of here I'm going to go by yourself because that's who she's worked with Docs Who Care for years well so what now they're saying I'm not going to place you well because she also for whatever reason Docs Who Care is the one who did it to her based upon the conversation suppose they had said you know she's really a sorry Doc too would that be libelous or slanderous depends on the facts depends on whether it's a true statement I think but the genesis of the case is that Brian Williams reached out and tried to enforce something that didn't exist and bullied hospitals and Docs Who Care into not allowing Dr. Smith to work are we talking about a liberty interest we're talking about a property interest you're talking about a property interest but the property hasn't been damaged the property is damaged if you can't practice within 11,000 square miles in district court you said she had business expectations with three hospitals two of them were Newton Medical Center and McPherson they were not within this radius were they how did the defendant keep her from working at those two hospitals the defendant didn't on any that were outside the radius other than on certifications that were sent in where they also said this person isn't a good doctor isn't qualified so what were your business expectations that were damaged again she was an employee of Docs Who Care you didn't argue this geographical you didn't make this geographical argument below your business expectations argument was restricted to the three hospitals and two they didn't affect her because they were outside the radius and the third she was offered a position there the defendant said okay you can work there and she said I'm not going and I see I'm out of time but it was argued below the radius it's always been 60 miles all I did was add 8th grade math to it thank you very much Mark Good morning your honors may it please the court my name is Mark Cole I represent Bryan Williams and Labette County Medical Center and we will ask you to affirm the district court's grant of summary judgment in this case because the plaintiff Dr. Smith was not deprived of a protected property interest in her medical license and she did not suffer a loss of any legitimate business expectancy Dr. Smith appeals the district court's decision on those two claims out of the four that were decided by the district court I'll turn first to the section 1983 claim that Dr. Smith was deprived of a property interest that property interest is in her medical license and specifically her Kansas medical license and when we know from the case law in this circuit around the country and from the Supreme Court that when a property interest is in a medical license that license must be either actually or effectively revoked in order to properly state a deprivation of that property interest can you justify that, that seems pretty harsh that's the law your honor and I think when it comes to a property interest to take those into it seems unnecessarily harsh it makes you want to look at the cases and see if they really that was really a holding in those cases can you justify why it has to be a total revocation effective revocation of a license to be a property yeah and I think the case law is instructive as to what effective revocation means and the Stidham case from this circuit is a great example in that case there was a peace officer who was terminated from his position based on very bad allegations and in the course of him trying to pursue other employment was effectively unable to become employed as a peace officer I believe in the state of Utah he had evidence in that case that he sought 17 open positions with the cities within the reasonable range of him and then positions outside of that range and even though he was highly ranked and should have been considered to the top of the class and very much eligible for those jobs he couldn't get a single one and so that I think is a great example of where his peace officer certificate was not actually revoked like it wasn't torn up it wasn't rescinded but he couldn't use it to get a job at all in order to use that and a similar case is the Phelps case in which an attorney was making an allegation that representations in a newspaper made it difficult for him to get clients in the future and of course there was a liberty and property interest there in that case but the court said you had your license it was never limited or revoked in any way there's nothing preventing you from using that license and that's the case here we can look at the undisputed facts as it came from the district court that Dr. Smith was able to and did in fact use her medical license on a number of occasions and I think it was mentioned by Judge Kelly earlier in the record there's over 2600 hours that Dr. Smith worked in the 13 months after she left Labatt Health in the state of Kansas using her Kansas medical license Counsel does it make any difference to our analysis whether there ever was a valid contract between the doctor and your clients? No it doesn't I don't think we have to get there the district court didn't need to get there to make that decision of course we can discuss that as certain other allegations are made regarding limitations on docs who care which the record doesn't support but we don't have to get to whether or not there was or was not a contract that's not necessary for a determination and that's why the district court here validly denied the motion for summary judgment made by Dr. Smith because Dr. Smith had a competing motion for summary judgment on that specific part and that was denied as moot instead of truly arguing that her Kansas license was effectively revoked Dr. Smith essentially relies on language analyzing liberty interest cases to say that her license was weakened and devalued now this argument fails for two reasons the first is legal the an argument that a license or property interest is weakened or devalued is not supported by the case law and there's no significant interest or real reason presented to this court to develop new case law or create a new claim in this case the second is factual and because even if losing one or some opportunities could suffice the undisputed facts in this case are that Dr. Smith did not lose any opportunity at all in fact she received privileges at every single hospital of which she applied she doesn't make it there is no evidence in the record that she sought employment at any particular institution and did not receive that employment at a basic level and then not to mention not because of Mr. Williams or Libet County Medical Centers statements she's she argues as I understood the argument here that the defendants had contacted the hospitals within this range within the radius and said you're going to get sued if you hire her and so she didn't seek it and her employer didn't seek positions in that area so does exceeding to what seems to be inevitable defeat her claim isn't isn't it reasonable to think that she might have sought employment at hospitals closer to her home so she wouldn't have to commute as far what's your response to that? There's a few points in response the first is factual and there are undisputed facts in this case one of which is there was only one hospital that Mr. Williams or the hospital reached out to to inform them of the non-compete only one and that was Wilson Medical Center and did they tell her employer that they wouldn't let her work within this area? So to back up a little bit on that her employer was actually an entity called Quality Care LLC that she owned along with her husband she was never employed by Docs Who Care the Docs Who Care contract which is in the record she's an independent contractor of Docs Who Care Docs Who Care is what's called a locum tenens company essentially they're a temporary physician placement company so they have Docs Who Care's contracts with hospitals and medical centers and when those medical centers have a short term need be it that a physician is on vacation sick or whatever else they'll contact people who they have an independent contractor arrangement with to place those people in those hospitals for a short period of time that's the Docs Who Care business that we're talking about here so she was never employed is there any evidence about whether Docs Who Care was contacted by any hospitals within the radius? Not hospitals but Mr. Williams did contact Docs Who Care in response to Dr. Smith working a shift at Wilson so Dr. Smith did work a shift at Wilson Medical Center in February of 2019 after learning of that Brian Williams contacted Docs Who Care and said she is subject to a non-compete agreement and we intend to enforce it now to add on to that he said specifically we don't have a signed agreement told them we don't have one we've looked for one we don't have one however we have paid her under these agreements for years and we believe them to be enforceable so his state of mind is present there telling them we don't have a signed agreement but we believe we have an enforceable arrangement with her. That would discourage a company that doesn't want to get involved in litigation would it not? I agree that it could the record further indicates though these email exchanges are in the record that there's conversations with Dr. Smith in which she asserts that she does not have a non-compete that is effective against her and then there's conversations back with the hospital and Mr. Williams and in the end there is a statement from Docs Who Care to Dr. Smith when they re-offer the four day position or the four day shift at Wilson Medical Center saying I know you don't need Mr. Williams permission to do anything but I wanted to let you know that this was available. So saying we don't think that you have any restriction on you either and we're offering this back to you again. So there's no evidence that Docs Who Care believed that there was a non-competed issue there's no evidence that the hospital Wilson believed that there was a non-compete that could be enforced. So I assume from that there's no evidence that any of the hospitals within the radius had been in communication with Docs Who Care about Dr. Smith not being able to work there. That's entirely accurate, Your Honor. The evidence here and to take it back to what I discussed earlier about the Stidham case. In that case you had clear evidence that employment opportunities were sought and denied and denied specifically for the reason that the reasons that individual officer was terminated from his previous position. We don't have that in this case. There are no employment opportunities that are sought and denied which would be a necessary requirement to get to the level of even asking whether a property interest was effectively revoked. Do you know if her contract with Docs Who Care addressed at all any matters of geography either prohibitions based upon her former employment or promises to her about placing her at facilities that were closer to a residence? The contract did not and Dr. Smith admitted and this is an undisputed fact that she had no entitlement to work at any hospital that worked with Docs Who Care. There was no guarantee of a number of hours in that contract. There was no guarantee of any work in that contract. It's simply a temporary placement agreement where if we have a need and you agree to serve it then we'll pay you accordingly. That's all that agreement was. And to touch on that just briefly too, there was statements made in the district court, there were statements made and arguments made before this court that Docs Who Care had said we won't place you in these hospitals within an hour of your home. There is no admissible evidence in the record to that effect. The only evidence, if you want to call it that, is a statement by Dr. Smith in her deposition that she heard that from somebody. But that's hearsay. It's not admissible and there's nothing to support that in the record. In fact, everything, all the other evidence refutes that statement by Dr. Smith. The second issue I'll turn to is the tortuous interference claim. And this really follows much of the same reasoning as the Section 1983 claim. Dr. Smith must show that there was a loss of a legitimate business expectancy, but it's undisputed and the facts are undisputed here that she did not lose any business expectancy, not to mention a legitimate one. The primary argument advanced by Dr. Smith on appeal is this generalized claim that she was prevented from working with one hour of her home, this 11,310 square mile area. There is no support under Kansas law for that being a legitimate business expectancy. Kansas law requires that the business expectancy be reasonably certain, and an expectancy like that is simply speculative. As I mentioned earlier, Judge Federico, the Docs Who Care contract, that's what is relied on by Dr. Smith for that expectation, but there's no guarantee in that contract of placement at any particular location, not to mention within a certain geographical distance from her home. And as I referenced earlier, the undisputed facts here contradict that because she was an independent contractor of Docs Who Care, she was simply agreeing to provide temporary locum services. And I think it's important to note that there was no entitlement to any job or any work anywhere under that agreement. At a basic level, Your Honors, there was no genuine issue of material fact to show that Dr. Smith lost any kind of business expectancy that would support her claim for tortious interference. And so I'll stop there and ask you to affirm the District Court's judgment here, granting summary judgment on the two claims that are before you, the 1983 TAM and tortious interference. Thank you. Thank you, Counselor. Does he have any remaining time? Nope, he's 29 seconds over. Thank you then. Case is submitted. Counselor excused.